UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

—————————

No. 06-1654
(3:05-cv-00076-nkm)

—————————


VAN DER LINDE HOUSING, INCORPORATED,
d/b/a Container Rentals,

                                    Plaintiff - Appellant,


        versus


RIVANNA SOLID WASTE AUTHORITY,

                                    Defendant - Appellee.


—————————

O R D E R

—————————


        The court amends its opinion filed November 7, 2007, as

follows:

        On page 2, section I, lines 7 and 14 – the word "Albermarle"

is corrected to read "Albemarle."


                                For the Court

                                /s/ Patricia S. Connor
                                ——————————————
                                Clerk

**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

VAN DER LINDE HOUSING,
INCORPORATED, d/b/a Container
Rentals,

$\left.\begin{array}{l} \\ \\ \\ \textit{Plaintiff-Appellant,} \\ \\ \text{v.} \\ \\ \\ \textit{Defendant-Appellee.} \end{array}\right\}$   No. 06-1654

RIVANNA SOLID WASTE AUTHORITY,

Appeal from the United States District Court
for the Western District of Virginia, at Charlottesville.
Norman K. Moon, District Judge.
(3:05-cv-00076-nkm)

Argued: May 23, 2007

Decided: November 7, 2007

Before WILKINSON and SHEDD, Circuit Judges, and
Frank D. WHITNEY, United States District Judge for the
Western District of North Carolina, sitting by designation.

Affirmed by published opinion. Judge Whitney wrote the opinion, in
which Judge Wilkinson and Judge Shedd joined.

**COUNSEL**

Kevin M. Rose, BOTKIN & ROSE, P.C., Harrisonburg, Virginia, for
Appellant. Jim Harold Guynn, Jr., GUYNN, MEMMER & DILLON,
P.C., Roanoke, Virginia, for Appellee.

**OPINION**

WHITNEY, District Judge:

Van der Linde Housing, Inc. ("Van der Linde") appeals the dismissal of its complaint against the Rivanna Solid Waste Authority ("the Authority"), alleging, inter alia, that it was denied equal protection of the laws in violation of the Fourteenth Amendment. We review the district court's order of dismissal de novo, *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999), and now affirm.

I.

Van der Linde is a Virginia corporation with its principal place of business in Charlottesville, Virginia. As a municipal waste disposer, Van der Linde owns fourteen roll-off container trucks that it uses to collect, transport, and dispose of municipal solid waste pursuant to contracts with various third parties. Van der Linde collects municipal solid waste primarily from construction sites in several municipalities, including the City of Charlottesville and Albemarle County, Virginia. Van der Linde uses a variety of locations for waste disposal, including (at the time this action was instituted) a transfer station ("Zion Crossroads Transfer Station") near Zion Crossroads, Virginia.

The Authority is a governmental entity that is vested under Va. Code § 15.2-5136 with the authority to fix disposal fees or "tipping fees" on waste originating within its service area. The Rivanna Service Area is defined as the City of Charlottesville and Albemarle County, Virginia. In 1997, the Authority entered into an agreement with BFI Waste Systems of North America, Inc. ("BFI"), which then owned the Zion Crossroads Transfer Station, to allow waste haulers within the Rivanna Service Area to deposit their waste at the transfer station. The Zion Crossroads Transfer Station is presently owned and operated by Allied Waste Systems ("AWS"), BFI's successor. In addition to operating the transfer station, AWS also collects, transports, and disposes of municipal solid waste originating in the Rivanna Service Area, competing directly against Van der Linde and other waste haulers.

Under the agreement, the Authority is responsible for collecting disposal fees from all Rivanna Service Area haulers which deliver municipal solid waste to the Zion Crossroads Transfer Station. The fee has two components: (1) a base disposal fee of $46 per ton that the Authority collects and pays to AWS for the use of the transfer station; and (2) a "service contribution fee" of $16 per ton, which the Authority retains in return for providing "comprehensive waste management services." "Comprehensive waste management services" is not defined in the agreement, but the Authority maintains that it is a service charge for billing and operational costs.

Prior to 2005, Van der Linde paid the $46 per ton base disposal fee directly to AWS and therefore paid nothing to the Authority, since the Authority was not involved in the billing process. Beginning in 2005, however, the Authority began asserting its rights under the agreement to invoice area waste haulers (except AWS) for their use of the transfer station and tack on the $16 per ton service contribution fee. Van der Linde does not challenge the rationality of exempting AWS from the $46 per ton base fee, which, if assessed against AWS, would simply be remitted back to itself. However, Van der Linde does argue that all area waste haulers, including AWS, should share equally in the responsibility for paying the Authority's billing and operational costs through the $16 per ton service contribution fee.

Van der Linde, through the institution of this lawsuit in late 2005, had not passed the $16 per ton "service contribution fee" onto its customers, and alleges that because of this it has incurred approximately $31,882.35 in damages by absorbing the cost of the fee. Additionally, Van der Linde alleges that it will suffer lost business because AWS has been contacting customers of Van der Linde and informing them that they can save $16 per ton by switching to AWS for municipal waste disposal. Since AWS does not have to pay the $16 fee, it does not have to pass this cost on to its customers, and thus AWS has a $16 per ton price advantage over all of its competitors. These activities form the basis of Van der Linde's equal protection claim.

## II.

### A.

The Equal Protection Clause to the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdic-

tion the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Clause does not proscribe most forms of unequal treatment, because "[l]awmaking by its nature requires that legislatures classify, and classifications by their nature advantage some and disadvantage others." *Helton v. Hunt*, 330 F.3d 242, 245 (4th Cir. 2003). Rather, the guarantee of equal protection was intended merely "as a restriction on state legislative action inconsistent with elemental constitutional premises." *Plyler v. Doe*, 457 U.S. 202, 216 (1982). Thus, the Constitution only forbids arbitrary differentiations among groups of persons who are similar in all aspects relevant to attaining the legitimate objectives of legislation. *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920).

Some classifications, like those based on race and gender, are deemed inherently "suspect" because they are rarely relevant to attaining a permissible legislative goal, and thus are subjected to varying degrees of heightened scrutiny by the courts. *Plyler*, 457 U.S. at 216 & n.14. Other classifications will likewise be treated as suspect where they have the purpose or effect of burdening a group in the exercise of a fundamental right protected by the Constitution. *Id.* at 217 & n.15. But the vast majority of governmental action — especially in matters of local economics and social welfare, where state governments exercise a plenary police power — enjoys a "*strong presumption* of validity" and must be sustained against a constitutional challenge "so long as it bears a rational relation to some legitimate end." *Helton*, 330 F.3d at 246 (emphasis added).

The Supreme Court has described the rational basis standard of review as "a paradigm of judicial restraint." *F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 314 (1993). It is emphatically not the function of the judiciary to sit as a "super-legislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *Smith Setzer & Sons, Inc. v. S.C. Procurement Review Panel*, 20 F.3d 1311, 1323 (4th Cir. 1994). Van der Linde bears the heavy burden of negating every conceivable basis which might reasonably support the challenged classification. *Beach Communications*, 508 U.S. at 315. Moreover, the Authority's policy decisions are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *Id.* Neither may a

policy's rationality be judged on the basis of its wisdom, fairness, or logic (or lack thereof). *Id.* at 313. "[A]bsent some reason to infer antipathy, even improvident decisions will eventually be rectified by the democratic process and . . . judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Vance v. Bradley*, 440 U.S. 93, 97 (1979). Thus, to be irrational in the Constitutional sense, "the relationship of the classification to its goal" must be "so attenuated as to render the distinction arbitrary." *Nordlinger v. Hahn*, 505 U.S. 1, 11 (1992).

B.

Van der Linde cannot satisfy its heavy burden of negating every conceivable basis supportive of the Authority because there is an unassailable rational basis supporting the economic classification here at issue. Van der Linde's lawsuit seeks nothing more than to challenge the Authority's assessment of a service fee against waste haulers who utilize disposal services that the Authority makes available to them. The Authority has negotiated for the right of Van der Linde and other area waste haulers to dispose of their waste at a type of facility that they do not own but to which they must have access. The Authority then charges a service contribution fee for serving in this capacity as a market intermediary.[1]

To recite Van der Linde's argument in these terms is to refute it. The fundamental difference between Van der Linde and AWS, by which the Authority legitimately differentiates between them, is ownership versus non-ownership of a waste disposal site. In this one

---

[1]Although each waste hauler must have access to some outlet for waste disposal, no policy of the Authority forces Van der Linde to utilize the Zion Crossroads Transfer Station and thereby incur the service fee. For example, nothing in the record suggests that Van der Linde cannot avoid the fee altogether by (1) opening and operating its own transfer station or landfill or (2) hauling the municipal solid waste that it collects to an alternative disposal facility, such as another transfer station or directly to the landfill. Indeed, at oral argument counsel for Van der Linde represented that his client has begun recycling most of the waste it collects so as to avoid paying the fees associated with use of the Zion Crossroads Transfer Station.

important respect the economic relationship between the Authority and AWS is exactly the opposite of the relationship between the Authority and Van der Linde. AWS, which owns and controls the Zion Crossroads Transfer Station, obtains no benefit from the Authority's negotiation of a right of access to local disposal sites. In fact, AWS helps facilitate the supply of outlets for waste by making its own transfer station available to all other waste haulers through the Authority as intermediary. In other words, AWS is a supplier of the type of public services that the Authority provides, while Van der Linde is a consumer.

As far as government programs go, it is hard to conceive of a classification much more rational than the one at issue here. The Authority's classification places the financial burden upon those entities (like Van der Linde) that utilize the public services provided by the Authority, while exempting those entities (like AWS) that the Authority relies upon to ensure public access to those services. Thus, the classification here at issue is nearly perfectly tailored to effectuate the purpose for which the Authority exists: making available the means to dispose of municipal solid waste by negotiating with suppliers for landfill access and taxing consumers for the Authority's intermediary services. This tight fit between the Authority's classification and a legitimate public purpose is unassailable from a rational basis standpoint, which would support even a very loose fit. *Cf. Vance v. Bradley*, 440 U.S. 93, 108 (1979).

## C.

Van der Linde nevertheless argues that the Authority's classification is irrational because in practice it could produce an unintended, irrational result. The irrational result that Van der Linde fears is the monopolization of waste collection services in the hands of AWS, since the Authority's classification effectively gives AWS a $16 per ton cost advantage over other waste haulers.

Van der Linde's argument demonstrates its fundamental misunderstanding of the rational basis standard of review. The "rational" aspect of rational basis review refers to a constitutionally minimal level of rationality; it is not an invitation to scrutinize either the instrumental rationality of the chosen means (i.e., whether the classification is the

best one suited to accomplish the desired result), or the normative rationality of the chosen governmental purpose (i.e., whether the public policy sought to be achieved is preferable to other possible public ends). In other words, the Equal Protection Clause does not require the government to pursue a sound economic policy, only one that does not offend entrenched constitutional principles. Nor does it require that the methods by which the government pursues those policies be particularly palatable to us, so long as they are not completely arbitrary.[2] Thus, from a constitutional standpoint, our analysis is unaffected by the fact that the Authority has chosen to implement a waste management plan — clearly a legitimate governmental purpose — that incidentally might result in the monopolization of the waste collection market. Despite this potentially undesirable result, our inquiry ends with a determination of minimal rationality. Van der Linde's proper mode of redress for this kind of grievance is to challenge the Authority's policy by engaging the political process or using state channels for review of municipal governance, not by filing an equal protection lawsuit in federal court.

For these reasons, the district court's judgment of dismissal is

*AFFIRMED*.

---

[2]As Justice Holmes wrote in dissent in the now-overruled case of *Lochner v. New York*, 198 U.S. 45, 75-76 (1905):

> [A] Constitution is not intended to embody a particular economic theory, whether of paternalism and the organic relation of the citizen to the state or of laissez faire. It is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar, or novel, and even shocking, ought not to conclude our judgment upon the question whether statutes embodying them conflict with the Constitution of the United States.