**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————————

**No. 08-1633**

———————————

DAVID J. SOWERS,

       Plaintiff - Appellant,

    v.

POWHATAN COUNTY, VIRGINIA; BOARD OF SUPERVISORS OF POWHATAN
COUNTY, VIRGINIA,

       Defendants – Appellees,

    and

ROBERT R. COSBY,

       Party-in-Interest.

———————————

Appeal from the United States District Court for the Eastern
District of Virginia, at Richmond.  Robert E. Payne, Senior
District Judge.  (3:06-cv-00754-REP)

———————————

Argued: September 24, 2009      Decided: October 15, 2009

———————————

Before NIEMEYER and MICHAEL, Circuit Judges, and James P. JONES,
Chief United States District Judge for the Western District of
Virginia, sitting by designation.

———————————

Affirmed by unpublished per curiam opinion.

———————————

**ARGUED:** Patrick Michael McSweeney, MCSWEENEY, CRUMP, CHILDRESS &
TEMPLE, PC, Richmond, Virginia, for Appellant.  Robert A.
Dybing, THOMPSON MCMULLAN, PC, Richmond, Virginia, for

Appellees.  **ON BRIEF:** Wesley G. Russell, Jr., MCSWEENEY, CRUMP, CHILDRESS & TEMPLE, PC, Richmond, Virginia, for Appellant.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

This appeal involves the denial of a rezoning application filed by David J. Sowers in Powhatan County, Virginia. Sowers contends that the Powhatan County Board of Supervisors (the Board) denied him equal protection of the law by departing from its typical application procedures and by initially denying his application. The Board ultimately approved Sowers's application after he filed suit in state court. Sowers later sued the Board in district court under 28 U.S.C. § 1983, claiming that his application would have been approved sooner, and that he would have avoided litigation expenses, had the Board not violated his constitutional rights. The district court granted summary judgment to the Board. We affirm because Sowers does not present a genuine factual dispute over whether he was similarly situated to other zoning applicants, and he does not show that the Board lacked a conceivable rational basis for its differential treatment of his application.

I.

Sowers is a Virginia land developer who applied to the Board in June 2004 for the rezoning of a 250.9-acre tract of land from agricultural to residential. As part of his application Sowers tendered a voluntary cash proffer of $3,530 per lot to offset the impact costs of his proposed subdivision.

3

This amount was the Board's suggested minimum at the time. A few weeks after Sowers filed his application, the Board raised its suggested proffer amount to $6,395 per lot. Sowers refused official requests that he increase his cash proffer. He was entitled to refuse; under Virginia law, cash proffers are voluntary and zoning decisions cannot be conditioned on proffers. Gregory v. Bd. of Supervisors, 514 S.E.2d 350, 353 (Va. 1999).

In Virginia a rezoning application is reviewed by the local planning commission before it is presented for consideration by the local governing body. Sowers's application was first reviewed by the Powhatan County Planning Commission (the Planning Commission or Commission) in September 2004. Based on concerns voiced by residents and the Commission, Sowers revised his non-cash proffers and received a deferral of his public hearing before the Commission. At the hearing in October 2004 Sowers submitted further amended non-cash proffers to address impact concerns. Although he submitted his amended proffers after the deadline, the Commission voted to consider them. Several citizens spoke at the hearing in opposition to Sowers's proposed subdivision, articulating concerns such as increased traffic and the loss of the area's rural character. Many residents also sent letters in opposition. Additionally,

the Virginia Department of Transportation (VDOT) raised concerns regarding the traffic consequences of Sowers's proposal.

The Planning Commission gave Sowers the option of another deferral to address these concerns. Rather than opt for a deferral, Sowers requested that his application be sent to the Board for a vote. The Commission director testified in his deposition that this choice was "unusual." J.A. 670. The director characterized Sowers as a "tough negotiator" compared to other applicants, adding that although Sowers was not totally uncooperative, he was unlike other applicants because he was less willing to negotiate.

The Planning Commission sent Sowers's application to the Board with the recommendation that it be denied as it then stood. Sowers again revised his non-cash proffers to address concerns. However, because he did not submit the proffers at least ten days before the Board's November 17, 2004, public hearing, the Board voted not to consider them. This was admittedly exceptional; in no other instance had the Board refused to accept late proffers. Two days before the public hearing, the Planning Commission recommended to the Board that it either (1) remand Sowers's application to the Commission for consideration of remaining concerns or (2) defer his hearing. Despite the Commission's recommendation, the Board refused to

5

remand or defer. Like the late proffer rejection, the Board's refusal was exceptional.

In the meantime, one Board member, Russell Holland, had recused himself from voting on Sowers's application because he had been elected on a no-growth platform and owned 56 acres of the tract for which Sowers sought rezoning. (Sowers had contracted to buy the 56 acres from Holland.) Several citizens expressed concern that Holland's interest precluded him from representing their interests. Holland's name even appeared as a joint applicant on Sowers's application, though Sowers contends that this was an error.

The Board denied Sowers's rezoning application. The Board member who made the motion to deny gave as his reasons the "unusual circumstances of this case and the refusal of the applicant [Sowers] to initially work with the Planning Commission." J.A. 436. Sowers challenged the denial by suing the Board in state court. In January 2006, while his state suit was pending, the Board voted to reconsider his application. It approved his application in May 2006, and Sowers voluntarily dismissed his state suit.

Sowers then sued the Board in the Eastern District of Virginia under 42 U.S.C. § 1983, alleging that the Board's unprecedented refusal to consider his late non-cash proffers, defer consideration, or remand to the Planning Commission

6

amounted to an Equal Protection violation. Although his application was ultimately approved, he argued that it would have been approved earlier had the Board considered the revised proffers and deferred or remanded his application. The Board concedes that the only ways in which Sowers refused to work with the Planning Commission were his refusal to increase his cash proffer and his failure to address VDOT's traffic concerns. The district court concluded, however, that the record evidenced several plausible reasons for the Board to treat Sowers's application differently, both procedurally and substantively, and that Sowers failed to negate these conceivable rational bases for the County's differential treatment. The court granted summary judgment to the Board, concluding that Sowers (1) did not raise a genuine factual dispute over whether he was similarly situated to other zoning applicants and (2) did not show that the Board lacked a rational basis for its different treatment of his application. Sowers appeals.

## II.

We review the district court's grant of summary judgment de novo, "viewing the facts in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." E.E.O.C. v. Cent. Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir. 2009). Summary judgment is appropriate only

7

if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

Sowers premises his Equal Protection claim on being a "class of one," which requires him to show that he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000). The summary judgment record indisputably establishes that Sowers did not make either showing.

A.

Sowers did not raise a genuine factual dispute over whether he was similarly situated to other zoning applicants in Powhatan County. The County Attorney observed that Sowers's proposal was "extremely controversial," that it encountered "more and better organized opposition . . . than . . . most other rezoning or conditional use permit applications," and that the opposition "was not just limited to citizens living adjacent to the affected area." J.A. 495. Even when it is accepted that some of the other applications that Sowers points to as comparable also raised traffic concerns and aroused public opposition, the record still indisputably demonstrates that the public opposition to Sowers's application was so fervent as to

8

render him differently situated. Dozens of citizens sent letters protesting Sowers's proposal, and many spoke in opposition at the hearings before the Planning Commission and the Board.

Moreover, Sowers's proposed subdivision presented unique traffic concerns, particularly regarding access. All traffic entering and exiting the subdivision would pass through an existing subdivision, creating a "piggyback" or "funnel" traffic effect. J.A. 403-04. Sowers maintains that another application (the McClure application) also presented funnel traffic concerns. Even if this is true, the record shows that the funnel concerns were especially acute with Sowers's application.

Sowers was also differently situated from the standpoint of interpersonal relations, as evidenced by the Planning Commission director's characterization of Sowers as a "tough negotiator" who was unlike any other applicants with whom he had ever dealt. Further, Sowers differentiated himself from other applicants by skirting typical procedures through his request that his application be submitted directly to the Board, thereby removing it from initial Planning Commission consideration.

Even if we were to give Sowers the benefit of an inference that other zoning applications were similar to his

9

with respect to traffic concerns, public opposition, and hard-line negotiators, his application was materially different from others due to the recusal of Board member Holland. The recusal created a unique situation in which the residents most directly impacted by Sowers's proposal were deprived of expected representation. Even if Holland was mistakenly listed as a co-applicant with Sowers, the disclosure that a Board member who had run on a no-growth platform had a vested interest in a rezoning application for residential expansion is enough to show that Sowers was not similarly situated to other applicants.

B.

Sowers's Equal Protection claim fails on an alternative ground: he did not negate every conceivable rational basis for the Board's differential treatment. While it is undisputed that the Board deviated from past practice when it refused to defer, remand, or consider late proffers in Sowers's application, this is not enough to establish an Equal Protection violation when no suspect classification or fundamental right is at issue. Equal Protection is "not a license for courts to judge the wisdom, fairness, or logic of legislative choices." F.C.C. v. Beach Commc'ns, 508 U.S. 307, 313 (1993). "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection

10

challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." Id.

Sowers urges that because no statutory classification is at issue here, and because zoning decisions are adjudicative rather than general and are circumscribed by state law, the rational basis inquiry does not apply with its typical deferential force. This Court, however, applies the rational basis test to local permit and zoning decisions. Tri-County Paving, Inc. v. Ashe County, 281 F.3d 430, 438-39 (4th Cir. 2002); Sylvia Dev. Corp. v. Calvert County, 48 F.3d 810, 820 (4th Cir. 1995). "Whether a statute or administrative action employs a classification explicitly or implicitly," the Equal Protection analysis is the same. Sylvia, 48 F.3d at 820.

The "vast majority of governmental action -- especially in matters of local economics and social welfare, where state governments exercise a plenary police power -- enjoys a 'strong presumption of validity' and must be sustained against a constitutional challenge 'so long as it bears a rational relation to some legitimate end.'" Van Der Linde Hous., Inc. v. Rivanna Solid Waste Auth., 507 F.3d 290, 293 (4th Cir. 2007) (emphasis in original). We conclude that Sowers failed to meet the "heavy burden of negating every conceivable basis which might reasonably support" the differential

11

treatment.  Id.  It is not for this court to assess the "wisdom, fairness, or logic (or lack thereof)" of the Board's conduct. Id. at 294.  "The 'rational' aspect of rational basis review refers to a constitutionally minimal level of rationality; it is not an invitation to scrutinize either the instrumental rationality of the chosen means" nor the "normative rationality of the chosen governmental purpose."  Id. at 295.

Sowers argues that if state law bars certain grounds for a decision, then a decision based on those impermissible grounds necessarily cannot pass muster under rational basis review.  Our precedent makes clear that state law is independent from a rational basis inquiry.  A "violation of state law is not tantamount to a violation of a federal right."  Sunrise Corp. v. City of Myrtle Beach, 420 F.3d 322, 328 (4th Cir. 2005). "[D]isparate treatment, even if the product of erroneous or illegal state action, is not enough by itself to state a constitutional claim."  Sylvia, 48 F.3d at 825.  Therefore, even if the Board's differential treatment was grounded in part on Sowers's failure to increase his cash proffer, this reason, though illegal under state law, does not necessarily yield an Equal Protection violation.

In this case there was no Equal Protection violation because there were several other conceivable rational reasons for the Board's decision.  Rational basis review does not

12

require us to determine the Board's actual motivation. Beach Commc'ns, 508 U.S. at 315. We need only decide whether the Board had "plausible reasons" for its different treatment of Sowers's application. Id. at 313. The deference to democratic process that undergirds rational basis review means that we consider only whether the Board "reasonably could have believed that [its] action was rationally related to a legitimate governmental interest." Tri-County Paving, 281 F.3d at 439.

Because Sowers is unable to "negative every conceivable basis which might support" the Board's action, he cannot prevail on his Equal Protection claim as a matter of law. Beach Commc'ns, 508 U.S. at 315 (emphasis added). His initial request that his application go to the Board for a vote rather than through the Planning Commission provided a rational basis by itself for the Board to reject his later request for more time and the opportunity to submit further revisions. Sowers's own procedural deviation, combined with his tough negotiating stance, could also have led the Board reasonably to believe that further work with Sowers would require too much time and effort and prove fruitless in the end. The vehement public opposition to his application, the unique traffic concerns that his proposal raised, and the recusal of a Board member with a perceived self-interest also clearly provided rational bases for the Board's action. Even if the only way (other than his

13

refusal to increase his cash proffer) in which Sowers refused to work with the Planning Commission was his failure to address VDOT's traffic concerns -- concerns which Sowers maintains he did address in his late-filed proffers -- the Board could still have reasonably determined that re-engaging with Sowers would not have been productive.

Contrary to Sowers's contention, public opposition does furnish a rational basis for differential treatment in zoning decisions. Indeed, the very purpose of the deferential rational basis inquiry is to respect the democratic process, albeit with an eye to whether purely odious classifications are at work. The cases that Sowers cites are inapplicable. In City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 447 (1985), the Supreme Court struck down a zoning ordinance that prohibited the operation of a group home for mentally retarded individuals and observed that a "bare . . . desire to harm a politically unpopular group" is not a legitimate state objective. Similarly, in Romer v. Evans, 517 U.S. 620, 633 (1996), the Court invalidated a state constitutional amendment that "identifie[d] persons by a single trait" (homosexuality) and "then denie[d] them protection across the board." The Court reiterated that the "bare . . . desire to harm" an unpopular group is not a legitimate interest. Id. at 634. The public's opposition to Sowers's zoning application did not stem from

14

naked animosity or baseless fear, but from genuine concerns over traffic, safety, and the loss of rural surroundings.  His was not a case of "mere negative attitudes . . . unsubstantiated by factors which are properly cognizable in a zoning proceeding." Cleburne, 473 U.S. at 448.

C.

For the foregoing reasons, we conclude that Sowers has not raised a genuine issue of material fact as to whether he was similarly situated to other zoning applicants.  Nor has he shown that the Board lacked a conceivable rational basis for its different treatment of his application.  Accordingly, the judgment of the district court is

AFFIRMED.