TRAXLER, Chief Judge,
wrote a dissenting opinion as to Part IV:
Plaintiffs contend that the FSA violates the Equal Protection Clause by creating an exception for retired law enforcement officers allowing them to acquire and possess banned firearms and LCMs. Unlike other citizens, retired officers are permitted under the Act to receive these weapons upon retirement. See Md.Code, Crim. Law §§ 4-302(7)(i), 4-305(a)(2). Plaintiffs argue that Maryland arbitrarily and irrationally grants a privilege to retired law enforcement officers that it denies to them and other similarly situated citizens.
The Equal Protection Clause provides that “[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws.” U.S. Const, amend. XIV, § 1. The Equal Protection Clause “keeps governmental decisionmak-ers from treating differently persons who are in all relevant respects alike.” Nord-linger v. Hahn, 505 U.S. 1, 10, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992). The Clause, however, “does not take from the States all power of classification,” Personnel Adm’r v. Feeney, 442 U.S. 256, 271, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979); “[Ijawmaking by its nature requires that legislatures classify, and classifications by their nature advantage some and disadvantage others.” Helton v. Hunt, 330 F.3d 242, 245 (4th Cir.2003). Since “classification is the very essence of the art of legislation,” a challenged classification is “presumed to be constitutional under the equal protection clause.” Moss v. Clark, 886 F.2d 686, 689 (4th Cir.1989). To survive a constitutional challenge under the Equal Protection Clause, the classification in question “need only be rationally related to a legitimate state interest unless it violates a fundamental right or is drawn upon a suspect classification such as race, religion, or gender.” Giarratano v. Johnson, 521 F.3d 298, 303 (4th Cir.2008).
Plaintiffs do not suggest that we are presented with a suspect classification or a classification that impinges upon fundamental rights. Therefore, rational-basis scrutiny applies to determine whether the exception for retired law enforcement officers to possess prohibited semi-automatic rifles and magazines comports with Equal Protection.
An equal protection plaintiff first must “demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.” Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir.2001). To be “similarly situated” means to be “similar in all,aspects relevant to attaining the legitimate objectives of legislation.” Van Der Linde Housing, Inc. v. Rivanna Solid Waste Auth., 507 F.3d 290, 293 (4th Cir.2007) (emphasis added). “Once this showing is made, the court proceeds to determine whether the dispar *200 ity in treatment can be justified under the requisite level of scrutiny.” Morrison, 239 F.3d at 654; see e.g., City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439-40, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985).
In rejecting the equal protection claim, the district court proceeded no further than the threshold question of whether retired law enforcement officers in Maryland are similarly situated to law-abiding citizens who wish to possess weapons prohibited by the FSA. The district court concluded that retired law enforcement officers as a class are not similarly situated to the citizenry at large because of their firearms training and experience. The district court noted that officers who carry firearms are required to receive continuing classroom instruction, complete firearms training and qualify periodically with their firearms; that officers are trained how to store firearms and ammunition safely in the home; and that law enforcement officers, by virtue of their duty and authority to protect public safety by use of force if need be, are more experienced in the handling of firearms. Additionally, those officers who use one of the prohibited weapons during the course of duty are required to have received specialized training and instruction on these weapons.
Plaintiffs respond that retired officers have varying levels of training on these weapons, noting that most officers in fact do not have specialized training on a prohibited weapon during their employment and the FSA does not require retired officers who obtain prohibited weapons under the exception to have specialized training. Plaintiffs suggest that the training and experience thus does not differentiate retired officers in Maryland from Plaintiffs or other individuals, some of whom are trained on the handling of semi-automatic rifles and some of whom are not. Maryland believes the general firearms training received by all law enforcement officers while on the job is sufficient to set them apart as a class from ordinary citizens.
Plaintiffs urge us to follow Silveira v. Lockyer, 312 F.3d 1052 (9th Cir.2002), abrogated on other grounds, District of Columbia v. Heller, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008),* in which the Ninth Circuit invalidated a similar statutory provision under the Equal Protection Clause. I find this case instructive. In Silveira, the plaintiffs raised an equal protection challenge to a California statute banning “assault weapons” but “allowing the possession of assault weapons by retired peace officers who acquire them from their employers at the time of their retirement.” Id. at 1059. California’s law also contained an exception for active off-duty officers to use assault weapons “only for law enforcement purposes.” Id. at 1089 (internal quotation marks omitted). The court concluded that the exception for off-duty officers passed muster because it was rationally related to the statutory objective of preserving public safety:
We presume that off-duty officers may find themselves compelled to perform law enforcement functions in various circumstances, and that in addition it may be necessary that they have their weapons readily available. Thus, the provision is designed to further the very objective of preserving the public safety that underlies the [statute].
Id. By contrast, the court “discern[ed] no legitimate state interest in permitting re *201 tired peace officers to possess and use [assault weapons] for their personal pleasure” while denying it to others. Id. at 1091 (emphasis added). The court explained that because the retired officer exception “does not require that the transfer [of the weapon to the officer upon retirement] be for law enforcement purposes, and the possession and use of the weapons is not so limited,” the exception bears no rational relationship and in fact is “directly contrary to the act’s basic purpose of eliminating the availability of ... military-style weapons and thereby protecting the people of California from the scourge of gun violence.” Id. at 1090.
The Ninth Circuit did not explicitly address the threshold question of whether the plaintiffs and retired law enforcement officers were similarly situated; however, the court rejected the notion that retired officers should be allowed to possess assault weapons for non-law enforcement purposes simply because they “receive more extensive training regarding the use of firearms than do members of the public.” Id. at 1091. As the Ninth Circuit explained, “[t]his justification ... bears no reasonable relationship to the stated legislative purpose of banning the possession and use of assault weapons in California.... The object of the statute is not to ensure that assault weapons are owned by those most skilled in their use; rather, it is to eliminate the availability of the weapons generally.” Id.
The district court is likely correct that law enforcement officers receive greater firearms training and have more experience in the handling of firearms than an ordinary citizen and, in that respect, are not “similarly situated” to individuals who are not permitted to possess firearms banned under the Act. But, in my view, these differences are not “relevant to attaining the legitimate objectives of legislation.” Van Der Linde Housing, 507 F.3d at 293. Maryland’s Act was passed as part of “a comprehensive effort to promote public safety and save lives.” Brief of Appel-lees at 9. Like the Ninth Circuit in Sil-veira, I see the general firearms training a retired officer received while on active police duty as having only attenuated relevance to an overarching objective of the FSA — to preserve the safety of the public. A retired officer has no greater responsibility or authority than an ordinary citizen to protect the general public. I cannot discern how a retired officer’s ability to wield a semiautomatic weapon with great adeptness for his personal use would promote public safety through the elimination of semi-automatic rifles like the AR-15. See Silveira, 312 F.3d at 1091 (“The object of the statute is not to ensure that assault weapons are owned by those most skilled in their use; rather, it is to eliminate the availability of the weapons generally.”). For purposes of this particular provision, I conclude that retired law enforcement officers who are no longer charged with protecting the public are similarly situated to Plaintiffs who also wish to possess the prohibited weapons for personal uses such as self-defense.
Therefore, the only remaining question is “whether the disparity in treatment can be justified under the requisite level of scrutiny.” Morrison, 239 F.3d at 654. In this case, the requisite level of scrutiny is rational basis review. This is hardly an imposing barrier for a statute to surmount. Nonetheless, I think the best course, especially in light of our decision to remand the Second Amendment claim for the application of strict scrutiny review, is to remand the equal protection claim as well for reconsideration in light of this opinion. The parties on appeal focused their arguments on whether citizens like Plaintiffs and retired law enforcement officers are “similarly situated.” I would remand and have the *202 parties focus on whether the FSA’s exception permitting retired law enforcement personnel to possess semi-automatic, rifles and LCMs can be justified.

 Silveira v. Lockyer reaffirmed the Ninth’s Circuit position at the time that the Second Amendment does not confer an individual right to bear arms. See 312 F.3d 1052, 1060-61 (9th Cir.2002). The Supreme Court, of course, rejected this view in District of Columbia v. Heller, 554 U.S. 570, 592, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).