**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1732

SIENA CORPORATION, A Maryland Corporation; ROCKVILLE NORTH LAND
LLLP, A Maryland Limited Liability Limited Partnership,

Plaintiffs - Appellants,

v.

MAYOR AND CITY COUNCIL OF ROCKVILLE MARYLAND; BRIDGET
NEWTON, Rockville Mayor; BERYL FEINBERG, Rockville City Council Member;
VIRGINIA ONLEY, Rockville City Council Member; JANE DOE,

Defendants - Appellees,

and

MAYOR AND CITY COUNCIL OF THE CITY OF ROCKVILLE, MARYLAND,

Defendant,

------------------------------

PACIFIC LEGAL FOUNDATION,

Amicus Supporting Appellant,

INTERNATIONAL MUNICIPAL LAWYERS ASSOCIATION; MARYLAND
ASSOCIATION OF COUNTIES; CITY OF GAITHERSBURG,

Amici Supporting Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Roger W. Titus, Senior District Judge.  (8:16-cv-00243-RWT)

Argued: September 13, 2017              Decided: October 13, 2017

---

Before WILKINSON and NIEMEYER, Circuit Judges, and Raymond A. JACKSON, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Niemeyer and Judge Jackson joined.

---

**ARGUED:** Ira Thane Kasdan, KELLEY DRYE & WARREN LLP, Washington, D.C., for Appellants. Kevin Bock Karpinski, KARPINSKI, COLARESI & KARP, P.A., Baltimore, Maryland, for Appellees. **ON BRIEF:** Bezalel A. Stern, KELLEY DRYE & WARREN LLP, Washington, D.C., for Appellants. Debra Yerg Daniel, City Attorney, CITY OF ROCKVILLE, Rockville, Maryland; Sandra D. Lee, KARPINSKI, COLARESI & KARP, P.A., Baltimore, Maryland, for Appellees. Joshua P. Thompson, Anastasia P. Boden, PACIFIC LEGAL FOUNDATION, Sacramento, California, for Amicus Pacific Legal Foundation. Erek L. Barron, WHITEFORD, TAYLOR & PRESTON LLP, Bethesda, Maryland, for Amici International Municipal Lawyers Association, Maryland Association of Counties, and City of Gaithersburg.

---

WILKINSON, Circuit Judge:

This case arises from an amendment to Rockville's zoning ordinance that prohibited the construction of self-storage facilities within 250 feet of property on which a public school is located. Appellants Siena Corporation and Rockville North Land LLLP (collectively "Siena") complain that the enactment of this amendment amounted to a denial of their due process and equal protection rights under the Fourteenth Amendment. These claims are yet another attempt to circumvent the state's legitimate interest in zoning law and land use policy. We reject the attempt and affirm the dismissal of the action.

I.

Siena set out in 2013 to build an "ezStorage" self-storage facility in Rockville, Maryland. The property it purchased for this purpose was located at 1175 Taft Street, immediately adjacent to the intersection of Taft and First Streets. The property is zoned "Light Industrial," which at the time Siena purchased the property allowed for its use as the site of a self-storage facility. The property also happens to be located down the block from Maryvale Elementary School.

Upon learning of Siena's plans, Rockville's residents grew concerned that the ezStorage facility would pose a threat to the safety of Maryvale's students. A petition opposing the facility's construction was circulated and gathered 130 signatures. Maryvale's PTA unanimously passed a resolution decrying the facility's construction.

Residents attended Rockville Council meetings to voice their opposition. They expressed a fear that the ezStorage facility would increase traffic that would in turn

3

threaten the safety of the Maryvale students who crossed the intersection in front of the facility on a daily basis. As one resident explained, many of the items stored in self-storage facilities were transported in "U-Haul-style trucks," which were not driven by professional truckers and were "not easy to drive." J.A. 234. The residents also worried that the facility would be used to store illegal or hazardous materials and therefore invite crime into the area. One speaker recounted an incident in which "12 bodies and 40 cremated remains were found in two storage units rented by a former funeral director." J.A. 179-80. Finally, the residents feared that the facility's construction would release asbestos into the air, an issue Siena had yet to address. To answer these varied concerns, the residents of Rockville proposed that the Council amend Rockville's zoning ordinance to prohibit self-storage warehouses within 250 feet of school zones.

The Council requested that the Rockville Planning Staff draft a zoning text amendment to address the citizens' concerns. The resulting amendment made "Warehouse, self-storage" facilities in all Light Industrial, Heavy Industrial, Mixed-Use Business, and Mixed-Use Employment zones conditional on those facilities not being within 250 feet of property on which a public school was located. In effect, these changes prohibited self-storage facilities like Siena's from being built within 250 feet of lots with public schools.

This proposed zoning text amendment was presented to the Council, which authorized it to be filed. Pursuant to the Rockville City Code, it was forwarded to the Planning Commission, which recommended that the amendment be denied. *See* Rockville City Code § 25.06.02.d.1. Also pursuant to the Rockville Code, the Council gave notice

4

of and held a public hearing on the proposed amendment. *See id.* § 25.06.02.c, .f. The Council heard from both proponents and opponents of the zoning text amendment at this public hearing and afterward.

Siena meanwhile obtained from the Planning Commission conditional site plan approval. But final approval of the site plan was "subject to full compliance with" the nineteen conditions listed in the conditional approval, which called for various reviews and approvals by numerous local agencies. J.A. 717-25. The conditions included such things as: the Chief of Planning's approval "of the landscape, and architectural plans"; "review, approval, and permit issuance by [the Department of Public Works]" of various "detailed engineering plans, studies and computations"; application for and issuance of "a Public Improvement Plan" permit; approval of "a phasing plan for pedestrian access during the construction period"; and issuance of "a Forestry Permit." J.A. 718-20.

Siena has not alleged that it satisfied the conditions. Nor did it even apply for a building permit, much less commence construction of the proposed facility.

The Council ultimately adopted the zoning text amendment in February 2015 by a vote of 3-2, with the Mayor and two Councilmembers voting in favor. Siena sought judicial review of the amendment's adoption pursuant to Maryland law, *see* Md. Code, Land Use § 4-401, but this challenge was dismissed. *See Siena Corp. v. Mayor & City Council*, Nos. 1521, 1998, 2016 WL 5405207 (Md. Ct. Spec. App. Sept. 27, 2016); J.A. 490-98.

No longer able to build its ezStorage facility on its property, Siena filed suit in Maryland state court against the Council, the Mayor and two Councilmembers who had

5

supported the amendment, and a Rockville resident who had urged its adoption (collectively "the Council"). The complaint alleged that the zoning text amendment was specifically targeted at Siena to prevent it from constructing its proposed ezStorage facility. It claimed via 42 U.S.C. § 1983 that the amendment violated both the substantive due process and the equal protection guarantees of the Fourteenth Amendment. It also raised a host of state law claims.

The Council removed the case to federal district court and thereupon moved to dismiss or, in the alternative, for summary judgment. In dismissing Siena's federal due process claim, the district court held that Siena lacked a protected property interest in the ezStorage facility's construction because it had not applied for a building permit. Turning to Siena's equal protection claim, the court concluded that the zoning text amendment was rationally based, given the residents' concerns that self-storage facilities near schools could attract crime and traffic that would endanger students. The court dismissed Siena's state claims on grounds largely duplicative of its federal claims analysis.

## II.

Siena now appeals the district court's decision. We review the court's decision de novo, beginning with Siena's substantive due process claim. To succeed on this claim, Siena must establish (1) that it possessed a "cognizable property interest, rooted in state law," *L.M. Everhart Constr., Inc. v. Jefferson Cty. Planning Comm'n*, 2 F.3d 48, 51 (4th Cir. 1993) (quoting *Scott v. Greenville County*, 716 F.2d 1409, 1418 (4th Cir. 1983)), and (2) that the Council deprived it of this property interest in a manner "so far beyond the outer limits of legitimate governmental action that *no process* could cure the deficiency,"

6

*Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 827 (4th Cir. 1995). Siena has not cleared either hurdle.

A.

Of course, one can only be deprived of a constitutionally protected property interest if one had such an interest to begin with. An "abstract need or desire" or "unilateral expectation" of some property right is not enough. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Rather, a cognizable property interest requires "a legitimate claim of entitlement." *Id.* It is well established that such interests do not arise from the Fourteenth Amendment itself but rather "stem from an independent source such as state law." *Id.*

Siena maintains that it had a protected property interest in using its property to develop an ezStorage facility. We turn to Maryland law to determine whether this was the case. As we have explained, Maryland law dictates that

> in order to obtain a 'vested right' in the existing zoning use which will be constitutionally protected against a subsequent change in the zoning ordinance prohibiting or limiting that use, the owner must (1) obtain a permit or occupancy certificate where required by the applicable ordinance and (2) must proceed under that permit or certificate to exercise it on the land involved so that the neighborhood may be advised that the land is being devoted to that use.

*A Helping Hand, LLC v. Baltimore County*, 515 F.3d 356, 370-71 (4th Cir. 2008) (quoting *Powell v. Calvert County*, 368 Md. 400, 411 (2002)); *see also Cty. Council v. Dist. Land Corp.*, 274 Md. 691, 707 (1975); *Rockville Fuel & Feed Co. v. City of Gaithersburg*, 266 Md. 117, 124-26 (1972). The Rockville zoning ordinance echoes these requirements. *See* Rockville City Code § 25.01.09 ("Vested zoning rights.").

7

Siena does not dispute that it has satisfied neither of *A Helping Hand*'s requirements. It never so much as applied for a building permit. In fact, it never satisfied the conditions on its site plan approval, which serves as a prerequisite to eligibility for a building permit. *See* Rockville City Code § 25.07.01.d.

Instead, Siena attempts to wriggle out from under *A Helping Hand*'s squarely applicable holding by drawing a semantic distinction between "property interests" and "vested interests." We have no idea what exactly Siena means by a distinguishable "vested interest" or where exactly such an interest comes from. Siena is attempting simply to use terminology to sow confusion in the law. Constitutionally protected property interests are necessarily vested, as it is only upon vesting that a property interest becomes the sort of "legitimate claim of entitlement" that the Fourteenth Amendment protects. *Roth*, 408 U.S. at 577. It should therefore come as no surprise that this court and others have used the two terms interchangeably in the due process context. *See, e.g.*, *A Helping Hand*, 515 F.3d at 370 (explaining that "vested right[s]" are "constitutionally protected" (quoting *Powell*, 368 Md. at 411)); *Seguin v. City of Sterling Heights*, 968 F.2d 584, 591 (6th Cir. 1992) ("As plaintiffs have no vested property right, they do not have standing to challenge the zoning ordinance on procedural due process grounds."); *Ganadera Indus., S.A. v. Block*, 727 F.2d 1156, 1160 (D.C. Cir. 1984) (concluding that a party had "no constitutionally-protected property interest" because it had no "vested right" (quoting *The Abby Dodge*, 223 U.S. 166, 176-77 (1912))). Regardless of label, Siena lacked the sort of property interest the Fourteenth Amendment protects.

8

In failing to apply for a building permit, Siena has blithely bypassed Maryland's prescribed zoning processes. And Siena's attempts to explain its noncompliance are unpersuasive. Siena first claims that it never applied for a building permit because doing so would have been futile in light of the zoning text amendment. But futility arguments are often wanting when no attempt is ever made to give prescribed processes a chance.

Siena then does an about-face. It claims, paradoxically, that the Council had no choice but to issue it a building permit. And because the Council was obligated to do so, Siena argues that its property interest was plainly present. *See Gardner v. Baltimore Mayor & City Council*, 969 F.2d 63, 68 (4th Cir. 1992) ("[W]hether a property-holder possesses a legitimate claim of entitlement to a permit or approval turns on whether, under state and municipal law, the local agency lacks *all* discretion to deny issuance of the permit or to withhold its approval.").

We again are unpersuaded. To hold that the issuance of something as important as a building permit is wholly nondiscretionary even before the necessary conditions have been met would handcuff local land use decision-makers to an extraordinary extent. Indeed, it would leave them at the mercy of whatever plans a developer might devise and secure tentative approval of. Imposing such obligations would have the federal courts wrest zoning processes from the hands of the very bodies historically charged with land use responsibilities.

This court has accordingly been quite reluctant to read state law to impose a stream of obligations on land use planners without a clear directive from the state itself that such obligations exist. Time and again we have explained that zoning "is an

inherently discretionary system." *Id.* at 67; *see also AT & T Wireless PCS, Inc. v. Winston-Salem Zoning Bd. of Adjustment*, 172 F.3d 307, 316 (4th Cir. 1999) (same); *Sylvia Dev. Corp.*, 48 F.3d at 828 (same). The system is both practical and particularized. The decisions of land use planners depend on the particular plans that are submitted and the particular areas that are affected. The latitude these planners have to resolve these particularized proposals is integral to a state's utilization of its police powers. Federal courts, by contrast, are far removed from the "'local conditions necessary to a proper balancing of the complex factors' that are inherent in municipal land-use decisions." *Gardner*, 969 F.2d at 67 (quoting *Sullivan v. Town of Salem*, 805 F.2d 81, 82 (2d Cir. 1986)).

The Maryland courts have been clear that the issuance of a building permit is not perfunctory when applications do not "fully comply with applicable ordinances and regulations." *Evans v. Burruss*, 401 Md. 586, 605 (2007); *see also Cty. Council v. Zimmer Dev. Co.*, 444 Md. 490, 557-58 (2015); *City of Bowie v. Prince George's County*, 384 Md. 413, 440 (2004). And the plan approvals on which those permits often depend "require[] planning expertise and the exercise of a broad range of discretion" on matters as sensitive as "civic beauty, local infrastructure, and environmental concerns." *Zimmer Dev. Co.*, 444 Md. at 558.

The present case is no exception, for the very nature of Siena's conditional site plan approval defeats any claim that Siena had a nondiscretionary entitlement to a building permit. Rockville's Code dictates that "no building permit may be issued" until the requisite site plan approval "has been obtained." Rockville City Code § 25.07.01.d. In

10

this case, that approval was "subject to full compliance with" the listed conditions. J.A. 717. Because Siena never satisfied these conditions, it was not eligible for a building permit. Furthermore, many of the conditions themselves entailed the discretionary approvals of various local agencies. Siena was required to seek, for instance, the Chief of Planning's approval "of the landscape, and architectural plans." J.A. 718. The Chief of Planning retains discretion in considering Siena's request "with regard to matters and facts pertinent and applicable thereto" and "[r]ender[ing] a decision in accordance with the requirements, purpose and intent of" the Rockville Code. Rockville City Code § 25.04.06.a.2. Siena must submit for the Department of Public Works's "review, approval, and permit issuance" a variety of "detailed engineering plans, studies and computations." J.A. 718. Likewise, Siena must receive Rockville's approval of "a concept plan" for the provision of publicly accessible art. J.A. 720. The purpose of such art is "to preserve and enrich the character and environment of the community, improve the quality of life for those who visit, live and/or work in the City, ameliorate the harshness of increased urbanization, and foster the economic vitality of the community." Rockville City Code § 4-41. Siena's building permit-to-be, then, was far from a foregone conclusion. And the "significant discretion" that remained with the zoning authorities "defeats the claim of a property interest," *Gardner*, 969 F.2d at 68.

B.

Even if Siena had a protected property interest here, the enactment of the zoning text amendment would still fall short of a substantive due process violation. State deprivation of a protected property interest violates substantive due process only if it is

11

"so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991). The state action must be "conscience shocking, in a constitutional sense." *Huggins v. Prince George's County*, 683 F.3d 525, 535 (4th Cir. 2012) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998)). In the context of local zoning actions, the local government's "alleged purpose" must lack any "conceivable rational relationship to the exercise of the state's traditional police power." *Sylvia Dev. Corp.*, 48 F.3d at 827; *see also MLC Auto., LLC v. Town of S. Pines*, 532 F.3d 269, 281 (4th Cir. 2008).

Siena's claim that the Council's adoption of the zoning text amendment shocks the conscience is easily rejected. That amendment was an attempt to protect students—in this case, elementary school students—from the hazards the Council believed to be associated with self-storage warehouses, among them the prospect of increased crime, traffic, and illicit drugs. Such concerns fall within the heart of the state's police power: safeguarding "the public health, safety, morals, or general welfare." *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926). Whether one agrees or disagrees with the Council's assessment of self-storage hazards is beside the point. As the local governing body, the Council was entitled to credit the concerns of the citizenry as to the safety of students and the welfare of children. The enactment represented nothing more than the ordinary exercise of a state's residual police power in land use and zoning, in which the state has long maintained a primary and sovereign interest. *See Gardner*, 969 F.2d at 67.

12

We also reject Siena's suggestion that the zoning text amendment was an arbitrary action targeted at Siena alone. It was rather a general legislative enactment that applied equally to all property zoned Light Industrial, Heavy Industrial, Mixed-Use Business, and Mixed-Use Employment. A single facility may provide the impetus for a general zoning enactment, but that does not mean the enactment is aimed solely at that facility. Nor does every loser in a zoning dispute have by virtue of the unfavorable outcome a so-called "targeting" claim. The Council certainly did not adjudicate any disputed facts related to the use or zoning of Siena's property in particular. Siena's property is still zoned Light Industrial and may still be used for any of the permitted uses in a Light Industrial classification. Siena makes hay of the fact that no other developer was currently planning to build a self-storage facility near a public school, but that is hardly dispositive. What matters is that the zoning text amendment applied to all developers—both present and future—who might entertain plans similar to Siena's.

Siena's claim boils down to its disagreement with the Council's action. "[N]othing is more common in zoning disputes than selfish opposition to zoning changes." *Coniston Corp. v. Village of Hoffman Estates*, 844 F.2d 461, 467 (7th Cir. 1988). All legislation benefits some parties while adversely affecting others. It is through the legislative process and the elected representatives who facilitate that process that the balance of beneficial and burdensome effects is struck. "Such give-and-take between government officials and an engaged citizenry is," after all, "what democracy is about." *Gardner*, 969 F.2d at 72.

The Rockville zoning process in this case was of course not just a matter of legislative give-and-take. It includes administrative review by local agencies, *see*

13

Rockville City Code § 25.06.02.d, a decision by elected representatives after public notice and hearing, *see id.* § 25.06.02.c, .f, .g, and often judicial review by state courts, *see* Md. Code, Land Use § 4-401. The worth of this process should not escape Siena, who took full advantage of all three mechanisms: the zoning text amendment was evaluated by the Planning Commission, voted on by the Council after substantial public deliberation, and reviewed by Maryland state courts. While Siena obviously does not relish the result, displeasure with state democratic outcomes does not ordinarily rise to the level of a federal constitutional violation.

III.

Siena's claim that the zoning text amendment violates the Fourteenth Amendment's equal protection guarantee fares no better. It is elementary "that when no fundamental right or suspect classification is at issue, the Equal Protection Clause allows a legislative body wide latitude in drawing classifications." *Tri-County Paving, Inc. v. Ashe County*, 281 F.3d 430, 438 (4th Cir. 2002). Such classifications are permissible so long as they are "rationally related to a legitimate state interest." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 440 (1985). This analysis looks not to the subjective motivations of the local officials. The test is simply whether the governmental end is legitimate and whether the means chosen to further that end are rationally related to it. *See Front Royal & Warren Cty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 290 (4th Cir. 1998).

As mentioned above, the state interest in protecting schoolchildren is readily apparent. If this interest is not legitimate, one would be hard pressed to conceive of an

14

interest that is. At the second step of the analysis, the zoning text amendment is rationally related to this protective interest. The Council could reasonably think that sizeable storage units attract relatively larger trucks loaded with multiple items to be stored and driven by drivers unaccustomed to larger loads. Barring the construction of self-storage warehouses near schools helps keep such trucks and traffic away from those schools. It also helps ensure that the many undeniably legitimate uses of self-storage do not serve as a cover for the few who might stash the illegal or hazardous materials that the Council wished above all to keep away from students. The Council was entitled to act prophylactically. The zoning text amendment nips the varied threats to the state's legitimate interest in the bud.

That some alternative commercial use might present similar safety concerns is beside the point. "It is no requirement of equal protection that all evils of the same genus be eradicated or none at all." *Ry. Express Agency v. New York*, 336 U.S. 106, 110 (1949). A state is perfectly within its rights to chip away at a problem piece-by-piece, so long as it does not unlawfully discriminate in the process. That the Council chose to resolve the self-storage issue today while leaving other problematic commercial uses for tomorrow is constitutionally unremarkable.

To the extent Siena suggests that the zoning text amendment uniquely burdened its property in a discriminatory manner, this argument too fails. The Fourteenth Amendment countenances "equal protection claims brought by a 'class of one,'" but such claims are successful only "where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the

difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Siena itself admits that it cannot identify a similarly situated competitor. Were such a competitor to exist, the zoning text amendment would apply to it in the exact same way it applies to Siena. As described above, the amendment is a general and rationally grounded provision that applies uniformly to all property zoned Light Industrial, Heavy Industrial, Mixed-Use Business, and Mixed-Use Employment within Rockville's limits.[*]

IV.

Siena further complains that this case was resolved at the summary judgment stage, but the district court was right to do so. Siena would have courts dive deep into the case and make empirical judgments as to the balance of harms and benefits in local land use disputes, but that is again the very reason we have legislative bodies. The more one assigns federal courts responsibility for making such judgments, the more we supplant in the name of one capacious constitutional provision the structure embodied in that same Constitution's delegation of residual authorities to the states. Siena's repeated contention that the Council's stated reasons were "pretextual" operates as nothing more than an invitation to this court to undertake an empirical inquiry and in effect to redo the local zoning decision from the ground up. This case is a garden-variety zoning dispute recast in

---

[*] We find no merit in Siena's remaining assignments of error. Those claims are raised in an entirely conclusory fashion or in a manner wholly duplicative of the federal claims we have earlier rejected. We pause only to note that Siena's civil conspiracy claim is especially ill founded. To hold that participants in the zoning process "civilly conspire" by simply talking to one another about proposed zoning actions threatens to undermine the very deliberation that ensures the vitality of democratic process.

constitutional terms. We must decline Siena's invitation to invade city hall and instead leave the job of legislating to those elected to perform it.

V.

For the foregoing reasons, the judgment of the district court is in all respects

*AFFIRMED*.