**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

### No. 17-2112

PULTE HOME CORPORATION; SHILOH FARM INVESTMENTS LLC,

Plaintiffs - Appellants,

v.

MONTGOMERY COUNTY, MARYLAND; MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION,

Defendants - Appellees.

Appeal from the United States District Court for the District of Maryland, at Greenbelt. George Jarrod Hazel, District Judge. (8:14-cv-03955-GJH)

Argued: September 25, 2018                Decided: November 29, 2018

Before WILKINSON and AGEE, Circuit Judges, and James P. JONES, United States District Judge for the Western District of Virginia, sitting by designation.

Affirmed by published opinion. Judge Jones wrote the opinion, in which Judge Wilkinson and Judge Agee joined.

**ARGUED:** Deborah Jean Israel, WOMBLE BOND DICKINSON (US) LLP, Washington, D.C., for Appellants. Howard Ross Feldman, WHITEFORD, TAYLOR & PRESTON, LLP, Baltimore, Maryland, for Appellees. **ON BRIEF:** Louis J. Rouleau, Lela M. James, Pascal F. Naples, WOMBLE BOND DICKINSON (US) LLP, Washington, D.C., for Appellants. Marc P. Hansen, John P. Markovs, Patricia P. Via, Paul F. Leonard, Jr., OFFICE OF THE COUNTY ATTORNEY, Rockville, Maryland;

Erek L. Barron, Bethesda, Maryland, Cara C. Murray, Baltimore Maryland, John J. Hathway, WHITEFORD, TAYLOR & PRESTON, LLP, Washington, D.C., for Appellee Montgomery County, Maryland. Adrian R. Gardner, William C. Dickerson, Elizabeth L. Adams, MARYLAND-NATIONAL CAPITAL PARK AND PLANNING COMMISSION, Riverdale, Maryland; Aaron L. Casagrande, Patrick D. McKevitt, WHITEFORD, TAYLOR & PRESTON, LLP, Baltimore, Maryland, for Appellee Maryland-National Capital Park and Planning Commission.

JONES, District Judge:

In this case involving a land use dispute, Pulte Home Corporation and Shiloh Farm Investments LLC (collectively "Pulte") ask us to revive their dismissed federal and state constitutional claims and wade into the waters of local government decisions and zoning regulations. That we decline to do. This court has stated repeatedly in similar cases, and as recently as last year, that federal courts are not the appropriate forum to challenge local land use determinations. We again conclude that the landowner has failed to state viable constitutional claims against local entities based on zoning actions. Because Pulte had no constitutional property interest in developing its land as it had contemplated, and the local authorities had a plausible, rational basis for their actions, we affirm the district court's entry of judgment on the pleadings.

I.

Pulte is a residential real estate developer. Between November 2004 and January 2006, Pulte purchased or contracted to purchase 540 acres of real property in Clarksburg, Maryland, which is located in Montgomery County ("County"). At the time Pulte purchased the land, development of it was governed by the 1994 Clarksburg Master Plan & Hyattstown Special Study Area ("1994 Master Plan"). The 1994 Master Plan divided development of Clarksburg into four stages. In the fourth stage, the part of Clarksburg containing Pulte's land was to be developed into residential communities at specified densities.

Pulte's land was designated as a receiving property for Transferable Development Rights ("TDR"). The land was zoned to allow for one dwelling unit per acre, but Pulte

3

could increase the allowable density to two units per acre by purchasing TDRs from agricultural properties in a different area of Montgomery County. The purchase of the TDRs would place a covenant on the agricultural property that would restrict its ability to be developed in the future. In essence, the TDR process was adopted by the County in order to encourage residential development in some areas while discouraging it in others.

Pulte invested more than twelve million dollars to purchase several hundred TDRs. It recorded its ownership of the TDRs. Its intention was to use the TDRs to build between 954 and 1,007 detached homes and townhomes on the land it had purchased in the TDR receiving area.

Under the 1994 Master Plan, there were several prerequisites for the commencement of Stage 4 development. These included a baseline biological assessment of the Little Seneca Creek and Ten Mile Creek watersheds; the issuance of at least 2,000 building permits in the areas that were to be developed in Stages 2 and 3; and the release of a report analyzing water quality management practices in analogous developments in similar watersheds and recommending best practices for water quality management and mitigation of potential environmental damage. All necessary triggers had occurred by 2009.

The 1994 Master Plan stated that "[i]ndividual developments within [Stage 4] can proceed once public agencies and the developer have complied with all of the implementing mechanisms." J.A. 311 n.2. One of the listed implementing mechanisms was that once all of the prerequisite conditions had been met, "the County Council will consider Water and Sewer Plan amendments that would permit the extension of public

4

facilities to the Ten Mile Creek area." *Id.* at 311. Another listed implementing mechanism was that "[p]roperties in this stage are subject to . . . approval by the Planning Board." *Id.*

Pulte submitted its Water and Sewer Category Change Request application for review by the County and the Maryland-National Capital Park and Planning Commission ("Commission") in May 2009, along with a required ten thousand dollar filing fee. The County, however, has never acted on Pulte's application. In September 2010, the County returned the filing fee and told Pulte that it would review the application in the spring of 2011. But 2011 came and went, and the County did not consider the application. Pulte resubmitted its application and filing fee in 2012, along with a water quality management plan, but the County still took no action on it.

In December 2012, Pulte submitted a Pre-Application Concept Plan to the Commission as required by the County Subdivision Ordinance. Pulte contends that the plan fully conformed with the governing Zoning Ordinance, yet the Commission rejected the plan as not ripe for review. The County and Commission refused to meet with Pulte to discuss the plan and stopped responding to Pulte's detailed letters and other communications.

Rather than proceeding with Stage 4 development, the County and Commission reopened the 1994 Master Plan to study the Ten Mile Creek watershed, in which Pulte's land is located. The 1994 Master Plan stated: "Master plans . . . are intended to be updated and revised about every 10 years. It is recognized that circumstances will change following adoption of a plan and that the specifics of a master plan may become

5

less relevant over time." *Id*. at 527. Regarding water and sewer change applications, the Master Plan provided that the County Council may undertake several alternative actions after completing assessments, including to "[d]efer action on a Water and Sewer Plan category change, pending further study or consideration as deemed necessary and appropriate by the Council" or to "[c]onsider such other land use actions as are deemed necessary." *Id*. at 312.

In October 2013, the Commission's Montgomery County Planning Board ("Planning Board") submitted to the County a draft amendment to the 1994 Master Plan, which the County extensively revised and approved ("Amendment"). Pulte asserts that the Amendment was aimed specifically at Pulte's land and was based on pretextual and faulty science regarding the proposed development's impact on water quality. The Amendment implemented a variety of regulatory changes that severely reduced the number of dwellings Pulte could build on its land and placed additional costly burdens on Pulte, such as a requirement to dedicate parkland.

Pulte had submitted its own expert reports to counter those of the experts retained by the Commission. Pulte's evidence indicated that the planned development would implement state-of-the-art environmental site design measures that would not only satisfy all state and local laws and regulations to protect water quality, but would actually improve the water quality of Ten Mile Creek over its pre-development condition. According to Pulte, the County ignored Pulte's expert reports entirely, failing to discuss them at all during work sessions on the proposed Amendment. Pulte has alleged that the County instead bowed to political pressure from environmental groups and set out to

6

develop whatever evidence it could to support the actions it had already determined it would take. After the public record had closed, the County solicited new testimony in an effort to justify the changes it intended to make to the draft Amendment.

The County approved a version of the Amendment that departed significantly from what the Commission had proposed. The Commission then adopted the version of the Amendment that the County had approved. The adopted version of the Amendment imposed a six percent cap on impervious surface cover and an eighty percent open space requirement on Pulte's land. On April 1, 2014, the same day that the Commission adopted the Amendment, the County suspended the erstwhile twice-per-year schedule for consideration of water and sewer applications and declared that any such pending applications would be reviewed together at an unspecified future time. Pulte contends that this announcement established a de facto moratorium on water and sewer change requests.

The County then enacted the Clarksburg West Environmental Overlay Zone in the Zoning Ordinance, which imposed the same low impervious cap and high open space requirement on Pulte's development of its land along with additional environmental requirements, while implementing a higher fifteen percent impervious cap on other properties in the Ten Mile Creek watershed. Soon thereafter, the Planning Board amended its Environmental Guidelines to require additional buffer zones and forest conservation plans and to otherwise greatly restrict the future use and development of Pulte's land. At the behest of the Commission, the County downzoned Pulte's land to an agricultural classification. Meanwhile, other properties in the Ten Mile Creek watershed

7

either retained their existing zoning classification or were upzoned. The County also enacted the Ten Mile Creek Special Protection Area, imposing further requirements on Pulte's development of its land. As a result of these new requirements and limitations, Pulte has alleged that it can now develop at most seventeen percent of its land, or ninety-three acres.

In response to what it perceived as an arbitrary and capricious targeting of its land, Pulte commenced a suit against the County and Commission in state court in November 2014. Pulte's Complaint asserted due process, equal protection, and regulatory taking claims under the United States and Maryland Constitutions as well as an additional state constitutional claim. The County removed the action to federal district court. After the parties had engaged in some discovery, but before any depositions had been taken or experts identified, the County and Commission moved for entry of judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), and the district court granted their motion. Pulte now asks us to reverse.

## II.

We review the district court's decision de novo, applying the same standard that applies to a dismissal under Federal Rule of Civil Procedure 12(b)(6). *People for the Ethical Treatment of Animals v. U.S. Dep't of Agric.*, 861 F.3d 502, 506 (4th Cir. 2017). We "accept[] as true all well-pleaded allegations in the plaintiff[s'] complaint and draw[] all reasonable factual inferences in the plaintiff[s'] favor." *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016). A motion for judgment on the pleadings is properly granted if "it appears certain that the plaintiff cannot prove any set

8

of facts in support of [its] claim entitling [it] to relief." *Priority Auto Grp., Inc. v. Ford Motor Co.*, 757 F.3d 137, 139 (4th Cir. 2014) (internal quotation marks and citation omitted).

## A.

We first consider the district court's dismissal of Pulte's claims under the Due Process Clause of the Fourteenth Amendment. The district court held that Pulte could not prevail on its substantive or procedural due process claims because it had no constitutional property interest to develop its land under the 1994 Master Plan or to have its Water and Sewer Category Change Request processed in light of the discretion reserved to the local authorities under the 1994 Master Plan. We agree.

To succeed on a due process claim, whether procedural or substantive, a landowner must first show that it had a constitutional property interest and that the state deprived it of that interest. *Quinn v. Bd. of Cty. Comm'rs*, 862 F.3d 433, 443 (4th Cir. 2017). One has a constitutionally protected property interest only if it has a "legitimate claim of entitlement," rather than a mere "abstract need or desire" or "unilateral expectation." *Town of Castle Rock v. Gonzalez*, 545 U.S. 748, 756 (2005) (internal quotation marks and citation omitted). Entitlements subject to due process protections are not created by the Fourteenth Amendment, but arise from and are defined by independent sources, including state law. *Id*. We therefore look first to state law to determine whether Pulte had a constitutional property interest in developing its land as it had contemplated under the 1994 Master Plan.

The Court of Appeals of Maryland has consistently stated,

9

> Generally, in order to obtain a vested right in an existing zoning use that will be protected against a subsequent change in a zoning ordinance prohibiting that use, the owner must initially obtain a valid permit. Additionally, in reliance upon the valid permit, the owner must make a substantial beginning in construction and in committing the land to the permitted use before the change in the zoning ordinance has occurred.

*Md. Reclamation Assocs., Inc. v. Harford Cty.*, 994 A.2d 842, 868 (Md. 2010) (citations omitted). It is undisputed that Pulte had neither obtained a permit nor begun construction at the time the Amendment was adopted.[1] And it is clear that Maryland law does not create any constitutional right to water or sewer service. *Neifert v. Dep't of Env't.*, 910 A.2d 1100, 1122 (Md. 2006); *see also Quinn*, 862 F.2d at 439-40; *Front Royal & Warren Cty. Indus. Park Corp. v. Town of Front Royal*, 135 F.3d 275, 286-87 (4th Cir. 1998).

Moreover, under a long line of this court's precedent, the considerable discretion afforded to the County and Commission by the 1994 Master Plan undermines Pulte's due process claims. *See, e.g.*, *Biser*, 991 F.2d at 104; *Gardner v. City of Balt. Mayor & City Council*, 969 F.2d 63, 64 (4th Cir. 1992). Just last year, in *Siena Corp. v. Mayor & City Council of Rockville, Maryland,* 873 F.3d 456, 463 (4th Cir. 2017), this court reiterated the longstanding rule that any "significant discretion" left to "zoning authorities defeats the claim of a property interest." *Siena* involved a zoning change that prohibited the

---

[1] While there is some suggestion that Maryland might be willing to apply the doctrine of zoning estoppel in certain circumstances, *Md. Reclamation Assocs.*, 994 A.2d at 875, Pulte cannot show that it relied in good faith on any government action — an essential element of zoning estoppel — because the 1994 Master Plan expressly stated that it would likely be revised and that the County could defer action on water and sewer change applications. But even if zoning estoppel applied here, it would not create a constitutional property interest. *Biser v. Town of Bel Air*, 991 F.2d 100, 104 (4th Cir 1993).

construction of self-storage facilities near a school. We noted, as we had many times before, that zoning is inherently discretionary. *Id.* at 462. Because the zoning authority retained discretion to grant or deny applications for building permits, the landowner's claims under the Fourteenth Amendment failed.

Years earlier, in *Sylvia Development Corp. v. Calvert County, Maryland,* 48 F.3d 810 (4th Cir. 1995), we considered a dispute involving transferable rights similar to those at issue in this case. The property at issue in *Sylvia* had not yet been designated as a receiving area for transferable rights, but the developer had argued that it possessed a property interest in obtaining such a designation because it had met all the requirements listed in the applicable ordinances. In ruling against the developer, we stated that although the developer may have "believe[d] that if it satisfied the stated criteria, it would receive" a transfer zone district designation allowing it to build with increased density, "that belief [was] at best a mere unilateral expectation, because the question of whether criteria are met must be resolved by the exercise of judgment." *Id.* at 826 (internal quotation marks and citation omitted). Because the developer in *Sylvia* had no legitimate claim of entitlement to the transfer zone designation, its due process claim failed.

Here, too, Pulte cannot show that the County or Commission deprived it of any constitutionally protected property interest. The 1994 Master Plan placed large discretion in the hands of the local authorities, as is to be expected when it comes to zoning, an "inescapably [] political function." *Id.* at 828. The 1994 Master Plan plainly apprised all who read it that it was intended to be revised about every ten years and that even after prerequisites had been satisfied, the County could delay action on water and sewer

11

change applications, conduct further studies, or take whatever land use actions it deemed necessary. It is hard to imagine a land use plan granting greater discretion to local officials. Because the 1994 Master Plan gave the appellees discretion to adopt the Amendment and to take the other actions they took with respect to Pulte's land, Pulte's procedural and substantive due process claims are not viable.[2]

B.

We turn next to Pulte's equal protection claim. Pulte has not alleged it was deprived of a fundamental right or subjected to discrimination based on a suspect classification. Therefore, we will uphold the distinctions drawn by the County and Commission if they were "rationally related to a legitimate state interest." *Siena*, 873 F.3d at 465 (internal quotation marks and citation omitted). Under this standard, a government entity "need not actually articulate at any time the purpose or rationale supporting its classification," and it is not required to produce evidence showing the rationality of its classification. *Heller v. Doe*, 509 U.S. 312, 320 (1993) (internal quotation marks and citation omitted). Choices like those challenged here are "not subject to courtroom fact-finding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 315 (1993). The zoning authorities' decision "must be upheld against equal protection

---

[2] In light of our conclusion that Pulte had no constitutional property interest in developing its land as it had contemplated or in having its water and sewer change application processed, we need not reach Pulte's argument that the lower court erred in dismissing Pulte's substantive due process claim on the ground that the appellees acted rationally and the Amendment was not arbitrary and capricious.

challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 313. The test is not a subjective one. *Siena*, 873 F.3d at 465. "The actual motivation for the [local government's] actions [is] irrelevant." *Tri-Cty. Paving, Inc. v. Ashe Cty.*, 281 F.3d 430, 439 (4th Cir. 2002).

Pulte first argues that the district court should not have considered the Amendment and statements contained therein in deciding the Motion for Judgment on the Pleadings because the Amendment was neither attached to nor integral to the Complaint, and the fact that it was prepared by the defendants renders it untrustworthy. That argument is unavailing. In *Goines v. Valley Community Services Board*, 822 F.3d 159 (4th Cir. 2016), we discussed in detail when it is appropriate for a district court to accept as true statements in documents attached to or incorporated into a complaint. "[B]efore treating the contents of an attached or incorporated document as true," we admonished, "the district court should consider the nature of the document and why the plaintiff attached it." *Id.* at 167. "[I]n cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

> The purpose for which the document is offered is particularly important where the document is one prepared by or for the defendant. Such unilateral documents may reflect the defendant's version of contested events or contain self-serving, exculpatory statements that are unlikely to have been adopted by the plaintiff. Treating the contents of such a document as true simply because it was attached to or relied upon in the complaint, even though the plaintiff relied on it for purposes other than truthfulness, would be contrary to the concept of notice pleading and would enable parties to hide behind untested, self-serving assertions.

*Id.* at 168 (internal quotation marks and citation omitted).

13

In this case, the district court did not accept the Amendment's assertions as true for purposes of ruling upon Pulte's equal protection claim. It had no need to consider the truth of the Amendment's statements because their truthfulness was beside the point. The district court was right to look to the Amendment because Pulte had alleged that the Amendment, a legislative document of public record, violated its constitutionally protected rights. If the Amendment reveals any rational reason for its adoption, it passes rational basis review even if its purported rationale was not the actual motivation behind it.

The Amendment articulates in detail environmental concerns that are specific to Pulte's property and gives reasons for imposing a low impervious cap and a high open space requirement on Pulte's land alone. Pulte's disagreement with those reasons and the science underlying them does not give rise to an equal protection claim. Pulte contends that it was treated differently from the other parcels of land in the Ten Mile Creek watershed, which it maintains were similarly situated. But in the Council and Commission's estimation, Pulte's land differed from these other parcels in important ways, including size, location, and the fact that several particularly sensitive tributaries of Ten Mile Creek originate on and flow through Pulte's land. These are rational distinctions, even if they were not the real reasons for treating Pulte's land differently.

It is not this court's place to second-guess the wisdom of elected local officials in making inherently discretionary zoning decisions. As the Supreme Court has explained,

> There are some forms of state action, however, which by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments. In such cases the rule that people should be

14

'treated alike, under like circumstances and conditions' is not violated when one person is treated differently from others, because treating like individuals differently is an accepted consequence of the discretion granted. In such situations, allowing a challenge based on the arbitrary singling out of a particular person would undermine the very discretion that such state officials are entrusted to exercise.

*Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 603 (2008). Local land use decisions are a quintessential example of subjective and individualized action by decisionmakers vested with the discretion needed to balance competing interests.

"When those who appear similarly situated are nevertheless treated differently, the Equal Protection Clause requires at least a rational reason for the difference . . . ." *Id.* at 602. The County and Commission provided rational reasons for treating Pulte's land differently, and that is the end of our inquiry. Pulte has not carried its "heavy burden of negating every conceivable basis which might reasonably support the challenged classification." *Van der Linde Housing, Inc. v. Rivanna Solid Waste Auth.*, 507 F.3d 290, 293 (4th Cir. 2007). The district court properly entered judgment on the pleadings in favor of the County and Commission on Pulte's equal protection claim.

## C.

The district court also concluded that Pulte could not demonstrate that the actions of the County and Commission amounted to a compensable regulatory taking of Pulte's property under the Fifth Amendment to the United States Constitution. The Takings Clause of the Fifth Amendment prohibits the taking of private property without just compensation. *Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005). Pulte has not

15

alleged a total or per se taking of its land by the government, but rather a regulatory burden on its property that it contends rises to the level of a taking.

Just last year, the Supreme Court reiterated the standard for analyzing a regulation that does not deprive an owner of all economic use of its property. *Murr v. Wisconsin*, 137 S. Ct. 1933, 1943 (2017). In assessing whether the regulation effects a taking, courts consider "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Id.* (reciting the factors set forth in *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978)).

The Supreme Court has said that where a due process claim is unsuccessful, "it would be surprising indeed to discover the challenged statute nonetheless violat[es] the Takings Clause." *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr. for S. Cal.*, 508 U.S. 602, 641 (1993) (internal quotation marks and citation omitted); *see also Henry v. Jefferson Cty. Comm'n*, 637 F.3d 269, 276 (4th Cir. 2011) ("[W]e are reluctant to push the notion that the denial of a permit in which one has no property interest can somehow amount to an unconstitutional taking."). Having already concluded that Pulte had no property interest in having its water-sewer application processed or developing its land as it had contemplated, we begin our application of the *Penn Central* factors with a skeptical eye toward Pulte's takings claim. In prior land use cases, this court has stated that an interest in obtaining sewer service "is nothing but an inchoate interest in the conferral of a benefit to enhance market value," *Front Royal*, 135 F.3d at 286, and that "[t]he Takings Clause simply does not create an affirmative obligation for

16

local governments to make good on speculative private investments or to increase property owners' land value," *Quinn*, 862 F.3d 439-40.

As to the first *Penn Central* factor, Pulte did not plead the exact diminution in value it alleges its property has suffered as a result of the Amendment and the local authorities' other actions. It concedes, however, that it can still develop approximately seventeen percent of its land, or 93 of its 540 acres. Even if we assume that Pulte has suffered an eighty-three percent diminution in the value of its property, that is not enough on its own to establish a taking. The Supreme Court has stated that "mere diminution in the value of property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe*, 508 U.S. at 645; *see also MHC Fin. Ltd. P'ship v. City of San Rafael*, 714 F.3d 1118, 1127 (9th Cir. 2013) (holding that an eighty-one percent diminution in value was not sufficient to constitute a regulatory taking). We have said that "[a] regulation is not a taking merely because it prohibits the most beneficial use of the property." *Quinn*, 862 F.3d at 442 (internal quotation marks and citation omitted). While the challenged zoning actions might prevent Pulte from building the lucrative development it envisioned, it is undisputed that Pulte remains able to construct a sizeable residential community on its land. Pulte also remains free to sell its unused TDRs to another developer for use in another location, allowing it to recoup at least some portion of its twelve million dollar TDR investment.

Regarding the second *Penn Central* factor, Pulte purchased undeveloped land that did not have water and sewer access at the time of the purchase. It may have wished to build a certain number of dwellings on the land, but the plain language of the 1994

17

Master Plan informed Pulte that there was no guarantee that the land would maintain its existing zoning classification or that a water and sewer change application would be granted. The text of the 1994 Master Plan stated that the County could take certain steps to "protect the environmentally fragile Ten Mile Creek watershed" and could, in its discretion, defer action on pending applications to allow further studies. J.A. 312. It was no secret that Pulte's land was not only within the Ten Mile Creek watershed but that tributaries to Ten Mile Creek originated on and flowed through Pulte's land. If Pulte expected to easily obtain approval to construct approximately one thousand homes there, that expectation was not reasonable in light of the text of the 1994 Master Plan. Pulte had only a hope, not a legally cognizable expectancy. Pulte's purchase here was no less speculative than the purchase in *Quinn*, where we held that the landowner had failed to establish a compensable regulatory taking. 862 F.3d at 439-40.

Turning to the third *Penn Central* factor, this court recently noted that "[m]anaging the density of development — even if it disappoints a particular developer — is thus a crucial goal of land use planning" and generally does not amount to a taking. *Id.* at 441. Local zoning authorities must have the ability to protect important natural resources and the interests of their local communities through reasonable land use restrictions without being forced by federal courts to pay compensation to every frustrated developer that had hoped to maximize its bottom line. Development restrictions designed to protect a vulnerable watershed and source of drinking water are an entirely appropriate form of local regulation, and they are unlikely to amount to a

18

regulatory taking particularly where, as here, the landowner is not left with a mere token interest but instead can still develop its property.

The district court properly applied the *Penn Central* factors and concluded, in accord with past decisions of this court, that Pulte was unable to establish that the regulatory actions of the County and Commission amounted to a taking of Pulte's property under the Fifth Amendment. We agree with the district court's analysis and will affirm its ruling.

D.

Finally, Pulte complains that the lower court erred in dismissing its claim under Article 19 of the Declaration of Rights of the Maryland Constitution. Article 19, entitled "Relief for injury to person or property," states

> [t]hat every man, for any injury done to him in his person or property, ought to have remedy by the course of the Law of the Land, and ought to have justice and right, freely without sale, fully without any denial, and speedily without delay, according to the Law of the Land.

Md. Const. art. 19. The article protects two rights: "(1) a right to a remedy for an injury to one's person or property; (2) a right of access to the courts." *Jackson v. Dackman Co.*, 30 A.3d 854, 866 (Md. 2011) (internal quotation marks and citation omitted). "Article 19 . . . has no counterpart in the United States Constitution, and most of [the] opinions interpreting and applying Article 19 have not relied on cases applying dissimilar provisions of the United States Constitution." *Dua v. Comcast Cable of Md., Inc.*, 805 A.2d 1061, 1071 (Md. 2002).

The district court concluded that because Pulte had no protected property interest, it had no claim under the first right. As to the second right, the district court held that it had not infringed upon Pulte's access to the courts because it was not ruling that the defendants were immune from suit or that Pulte failed to clear procedural hurdles to access the courts. Rather, said the district court, Pulte had been granted access to the courts, and its claims were considered and found to be deficient.

Pulte has alleged that the County and Commission violated Article 19 by actively preventing Pulte's rights from vesting, thereby thwarting its due process claims. By delaying to act on Pulte's water and sewer change application, Pulte argues that the appellees essentially immunized themselves from suit. Pulte contends that Article 19 is broader than the Due Process Clause, and that the lack of a constitutional property interest is irrelevant to an Article 19 claim.

We can find no support for Pulte's claim in Maryland jurisprudence. The County and Commission did not immunize themselves from suit. They merely acted as the 1994 Master Plan permitted. Pulte asserted its claims and the district court considered and dismissed them after applying controlling precedent. The local authorities did not violate the Maryland Constitution simply by exercising the discretion vested in them by the 1994 Master Plan. To hold otherwise would place Maryland zoning authorities in an impossible bind. The district court correctly dismissed Pulte's Article 19 claim.

III.

"Resolving the routine land-use disputes that inevitably and constantly arise among developers, local residents, and municipal officials is simply not the business of

20

the federal courts." *Gardner*, 969 F.2d at 67.  We recognize that Pulte originally filed this case in state court, but by asserting federal constitutional claims, it practically assured that the case would be removed to federal court.  Pulte could have challenged the local authorities' actions through the applicable state administrative appeals process, and it could have crafted its state court complaint in a way that would have avoided the entirely predictable result here.  Instead, Pulte, like many landowners and developers before it, is attempting to use a bevy of federal constitutional claims to displace state law and local decisionmaking.

Local zoning authorities must have the ability to respond to constantly changing environmental, economic, and social conditions, and we are unwilling to tie their hands by finding a constitutional property interest under the circumstances presented here, or requiring them to treat every property in a vulnerable watershed identically, or forcing them to pay compensation to every disappointed developer whose land has been downzoned.  To hold otherwise would be to invade the province of state law and render local officials unable to make the important decisions they were elected to make.

We find no error in the district court's rulings, and its judgment is therefore

*AFFIRMED.*