613 A.2d 104

**The McNAUGHTON COMPANY, a Pennsylvania corporation, t/a Midpenn Homes, Appellant,**

**v.**

**David WITMER, Zoning Officer of Upper Allen Township, a Township of the First Class, Cumberland County, Pennsylvania, and Upper Allen Township, Appellees.**

Commonwealth Court of Pennsylvania.

Argued June 18, 1992.

Decided July 21, 1992.

David J. Lanza, for appellant.

Donald M. Lewis III, for appellees.

Before COLINS and KELLEY, JJ., and LORD, Senior Judge.

LORD, Senior Judge.

The McNaughton Company (McNaughton) appeals a common pleas court order of January 15, 1992 which granted summary judgment in favor of appellees David Witmer, Zoning Officer, and Upper Allen Township, a First Class Township of Cumberland County, Pennsylvania.

McNaughton is the owner and developer of a residential land subdivision known as "Canterbury Estates" in Upper

Allen Township, Cumberland County. In September of 1987, Upper Allen Township (township) granted final subdivision approval to Phase I of the Canterbury Estates project. In August 1989, the township granted final subdivision approval to Phase II of the Canterbury Estates project. McNaughton proceeded to post bonding for site improvements and otherwise to develop Phases I and II in accordance with the ordinances of Upper Allen Township. McNaughton expended substantial sums in preparing for the installation of streets, curbing, sanitary sewers and other improvements. On June 16, 1988, the township enacted Ordinance No. 417, effective July 1, 1988, amended and restated as Ordinance No. 409 on August 18, 1988. This ordinance established a "sewer reserve rental charge" and was imposed and levied upon developers of building lots. McNaughton has made payments to the township for sewer reserve rental charges on all lots in Phase I and II pursuant to Ordinance No. 409. On October 18, 1989, McNaughton filed applications for building permits and sewer connection permits for thirteen approved building lots in Phases I and II.

On October 31, 1989 the township enacted ordinance No. 425, recognizing that the Grantham Waste Water Treatment Plant was operating at times at full capacity, and placing a ban on the issuance of building permits and sewer connection permits.

McNaughton's application and fees were returned on November 17, 1989 in a letter from the township's secretary-manager referencing and enclosing a copy of the guidelines for limited permit approval under the amended sewer connection moratorium ordinance.

McNaughton filed a complaint in mandamus on January 26, 1990 to compel the grant of the permits. The complaint did not specifically allege damages but concluded with a request that the court "grant such other relief as is deemed necessary and appropriate under the circumstances."

On June 11, 1991, the township repealed the moratorium enacted on October 31, 1989 and McNaughton received its permits. McNaughton now asks for damages as a result of

the delay of twenty months, from October 18, 1989 to June 11, 1991, the date of the repeal of the moratorium. McNaughton seeks damage resulting from this delay for additional debt service, its inability to construct houses or sell property and its inability to complete sales which were contracted for prior to the permit application. (McNaughton brief, p. 5)

The township argues that the action is moot because McNaughton has received the permits. There is no doubt that that portion of the mandamus which sought the issuance of the permits is moot because McNaughton has, in fact, received the permits. However, the township cannot defeat McNaughton's claim for damages by complying with the demand in the mandamus complaint for the permits. *Alberts v. Garofalo,* 393 Pa. 212, 142 A.2d 280 (1958). We must therefore examine the situation to ascertain whether McNaughton's right to the permits was clear and whether the township had a corresponding absolute duty to issue the permits when McNaughton applied for them on October 18, 1989 or anytime thereafter, including the time after the ordinance declaring the moratorium was enacted. We state the issue in this fashion, for it is axiomatic that no possible obligation on the part of the township to issue the permits could have arisen until they were requested. In addition, as we have pointed out above, McNaughton claims that the damages resulted from that period of delay.

There is no doubt that as a general principle certain damages are recoverable in a mandamus action. *Stoner v. Lower Merion,* 138 Pa.Commonwealth Ct. 257, 587 A.2d 879 (1991). However, we conclude in this case that McNaughton's mandamus action would fail as a matter of law, and, therefore, the trial judge properly granted summary judgment in favor of the township on the issue of damages.

McNaughton admits that it is not contesting the validity of the ordinance declaring a moratorium on the issuance of permits.[1] It is forced to make this admission because the law

---

1. Despite this admission McNaughton in its brief contends that there was a factual issue on the existing capacity at the treatment plant when ordinance No. 425 was enacted. Once the validity of the ordinance is

is clearly established that mandamus is inappropriate to test the validity of an ordinance. Once McNaughton admits the validity of the ordinance, it is clear that, after the passage of a valid ordinance on October 31, 1989 the township officials were required to abide by the ordinance and an action in mandamus would fail. *Unger v. Township of Hampton,* 437 Pa. 399, 263 A.2d 385 (1970). It follows, therefore, that McNaughton has no action for damages which are, in the words of *Stoner* "incidental to the relief sought," for his mandamus action itself would have been dismissed if it had been brought to trial during the period between October 31, 1989 and June 11, 1990.

 Under the circumstances of this case, it is of no significance that the request for the permits was filed thirteen days before the enactment of the ordinance. The record reveals that by letter of October 10, 1989, the township was advised by its manager that:

> Based on the above information I would like an immediate halt to building permits in this area until such time as the impact of these units currently under construction or unoccupied is determined and the inflow and infiltration is reduced.

Additionally, on October 12, 1989, McNaughton was advised that the Commissioners had imposed the ban. A public meeting was then held on October 19, 1989, at which Mr. McNaughton spoke against the ordinance. Thus, the township had determined that the emergency existed before the application for permits was filed and McNaughton knew of this determination. (All that remained was the formality of passing the ordinance.) Under such circumstances, we hold McNaughton acquired no vested rights. *Cf. Levin v. St. Peter's School,* 134 Pa.Commonwealth Court 342, 578 A.2d 1349 (1990) (landowner has vested right to permit issued under existing ordinance when *zoning* amendment is pending only when landowner has, in good faith, obtained valid permit under old ordinance, before amendment is enacted, and has incurred liabilities in reliance on said permit).

admitted, this issue and the testimony concerning that issue are irrelevant.

McNaughton also argues that his payment of the reserve sewer fees required the township to issue the permits. However, we disagree that the payment of the reserve sewer fees or the approval of the subdivision plans support a mandamus action when the township, faced with an apparently overloaded plant, declares an emergency and enacts an ordinance McNaughton admits is valid. Perhaps the township made a mistake, as McNaughton argues, either in its failure to reserve sufficient space for McNaughton or in its ascertainment of an emergency. However, those questions are not relevant in a mandamus action seeking the issuance of permits; they are especially irrelevant when McNaughton admits the validity of the ordinance which found an emergency and imposed a moratorium on all permits.

McNaughton also argues that certain principles which are applicable to zoning cases did not permit the township to refuse the permits. These arguments are 1) that the permits were deemed approved because there was not a proper rejection within 90 days;[2] and 2) therefore, McNaughton obtained a vested right to the permits by virtue of their approval of his subdivision plans and his expenditure of money.

We conclude that the trial court properly disposed of these arguments and quote from its opinion:

> Citing zoning cases, plaintiff maintains that the return of its application for building and sewer permits constituted an improper rejection of those applications by the Township; therefore, the permits are deemed approved ninety days after they were filed on October 18, 1989. 53 P.S. § 4104(a); *H.A. Steen Industries, Inc. v. Zoning Hearing Board of the Borough of Folcroft*, 113 Pa.Commonwealth Ct. 615 [, 538 A.2d 95] (1988). Thus, plaintiff maintains it has a vested right in the issuance of the permits, *Cooper v. City of Greensburg*, 26 Pa.Commonwealth Ct. 245 [, 363 A.2d 813] (1976); therefore the issuance of the permits has become a

2. As noted, McNaughton was notified of and spoke against the moratorium ordinance prior to submitting his permit applications, and the township's November 17, 1989 letter to McNaughton rejecting his permit applications referenced the guidelines for issuing permits under limited conditions during the moratorium.

ministerial act. Plaintiff also maintains that once it applied for building permits, Ordinance No. 425 could not affect the vested rights obtained as of the date of application. *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219 [, 328 A.2d 464] (1974); *Marinari v. Zoning Hearing Board of New Hanover*, 90 Pa.Commonwealth Ct. 601 [, 496 A.2d 121] (1985).

Finally, plaintiff maintains that estoppel prevents the Township from asserting a lack of sewer capacity as a basis for the moratorium on connections to the existing system because it had previously paid money into a sewer reserve rental fund as required by a separate ordinance.

The flaw in plaintiff's position is that it treats Ordinance No. 425 as a zoning ordinance, which it is not. Ordinance No. 425 was an emergency public safety enactment to protect the health and welfare of the residents of the Township. Whether it was constitutional, or lawful in scope, does not rest on zoning law; rather, it rests on whether a Township could declare the emergency and take the steps it did to protect the health and welfare of the community.

To this we merely add that, although the questions of vested permit rights and equitable estoppel do not rest exclusively on whether a *zoning* ordinance is alleged to have precluded official action, the ordinance was enacted pursuant to the township's inherent police powers. "There can be no doubt that the adequate disposal of sewage affects the health and welfare of the public and is therefore subject to regulation by the government pursuant to the police power." *Bodnar v. Columbia County Sanitary Administrative Committee*, 51 Pa.Commonwealth Ct. 332, 414 A.2d 735, 737 (1980).

The order of the common pleas court is therefore affirmed.

## ORDER

AND NOW, this 21st day of July, 1992, the Cumberland County Common Pleas Court order at No. 387 Civil 1990, dated January 15, 1992, is hereby affirmed.